FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

2016 MAR 21  PM 4: 12

Case No. 3:16-CV-330-J-32JRK

CLERK. US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

UNITED STATES ex rel. JOHN SIMONS,

       Plaintiffs,

vs.

NORTH CENTRAL FLORIDA HOSPICE, INC.
d/b/a HAVEN HOSPICE,

       Defendant.

_____/

**FILED UNDER SEAL**
**COMPLAINT FOR VIOLATION OF FEDERAL FALSE**
**CLAIMS ACT, 31 U.S.C.§ 3729 ET SEQ.**

THE UNITED STATES OF AMERICA ex rel., JOHN SIMONS ("*Dr. SIMONS*") (referred to as "*Relator*"), states as follows for their Complaint against Defendant, NORTH CENTRAL FLORIDA HOSPICE, INC. d/b/a HAVEN HOSPICE (hereinafter referred to as "*Defendant*" or "HAVEN HOSPICE"):

## I.    INTRODUCTION

1.    This is an action on behalf of the UNITED STATES OF AMERICA brought by Relator, JOHN SIMONS, seeking to recover civil damages and penalties from Defendant for knowingly making, and causing to be made, false and/or fraudulent Hospice reimbursement claims and records and/or statements to arrange for false claims to be paid by the Medicare program in violation of the Federal Civil False Claims Act, 31 U.S.C. §3729 *et seq.*, as amended (the "FCA") from on or about at least 2013 (Counts I-III).

2.    Defendant is a provider of multiple Hospice services (including but not limited to providing home Hospice care and Hospice services in assisted living facilities, skilled

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 2 of 20

nursing homes, operating and maintaining multiple Hospice care facilities as well as providing hospice care in miscellaneous other facilities) throughout the area known as the Middle District and Northern District of Florida. In 2013 HAVEN HOSPICE provided Hospice care to 4,351 patients and their families.[1] In 2013 Defendant had gross revenues of $63,479,626.00 of which most of the benefits came from Medicare. Defendant provides Hospice care to patients at their five care centers, these centers are as follows:

      a. The Tri-County Care Center located at 311 NE 9th Street, Chiefland, FL 32626;

      b. The E.T. York Care Center and corporate office located at 4200 NW 90th Blvd., Gainesville, FL 32606;

      c. The Suwannee Valley Care Center located at 6037 W. US Highway 90, Lake City, FL 32055;

      d. The Custead Care Center located at 745 Blanding Blvd., Orange Park, FL 32065; and

      e. Roberts Care Center at Satterwhite Campus of Care and Compassion located at 6400 St. Johns Ave., Palatka, FL 32177.

    3.    Each of HAVEN HOSPICE five separate care centers received and cared for end-of-life patients who suffer from complicated medical problems that require around the clock nursing and physician/nurse practitioner medical supervision and management. This is called General Inpatient "GIC" care.

    4.    Each individual that is admitted under GIC in the care center must qualify to be at the care center and the symptoms that need to be medically managed must be

---

[1] Source: 2013 Annual Report.

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 3 of 20

documented each day that they are there. Medicare reimburses the hospice an additional $650 for every day that the patient is there above and beyond the monthly dollars they receive for the patient who is enrolled in hospice.

5.       In order to continue to care for someone in the care center on GIC level of care, a doctor must daily write a note identifying the ongoing medical problems that necessitate the patient admission to the care center, and the appropriate medical intervention and treatment they received. This data is used to certify the appropriateness of their admission as a patient on GIC level care. GIC level care is treated and billed to Medicare just as if the patient were actually in a hospital.

6.       Relator observed that HAVEN HOSPICE does not properly document and certify that a patient needs GIC care and also billed daily for a physician or nurse practitioner visit that was not conducted in accordance with to Medicare guidelines. In fact there were many days when the patient was never seen by a doctor or nurse practitioner at all, yet billed for such services. In the Custead Care Center one doctor (Dr. Karnani) told Relator that he had not written a note on any patient since February 2015 and only saw a handful of patients from February – August 2015 when Relator left. The nurse practitioner (Sheri Smith) also told Relator that there are days and weeks that go by where she has not visited nor written a note on the patient's either.

7.       Relator called the acting medical director (Dr. Bicher) and asked her if not seeing GIC patients or documenting properly the need for GIC care was an acceptable practice, she stated that all the HAVEN doctors were overworked and that in fact many of the doctors in the other care centers do not write notes at all, or if they do, it is not consistent. In fact, she as well as several of the other doctors told Relator that it is not unusual for a patient to have entered

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 4 of 20

the care center on GIC level care and then died or been discharged and never have seen the doctor even once.

8.      The failure to properly certify and bill GIC level of care and bill Medicare daily for physician or nurse practitioner visits that did not occur is Medicare fraud.  In order to justify a patient's admission on GIC level care, the patient must be seen by the doctor and/or the nurse practitioner and a note be written every day.  When HAVEN HOSPICE bills Medicare for that day, they can only bill if the doctor or the nurse practitioner note justifies the patient's continued admission.  When HAVE HOSPICE bills Medicare they must not bill for a doctor visit when the nurse practitioner was the only one who saw the patient.  Conversely, HAVEN HOSPICE cannot bill for a nurse practitioner visit when the doctor was the only one who saw the patient.  HAVEN HOSPICE is prohibited from billing any kind of charges for GIC care if neither the ARNP nor the doctor saw the patient and certified the need for continued GIC care.  They are also not allowed to bill for any kind of charges if there is not a note to support continued GIC admission for pain and symptom management.

9.      Despite these requirements HAVEN HOSPICE, billed for every day a patient remained on GIC level care and sends a doctor's charge to Medicare even when the doctor never saw the patient.  HAVEN HOSPICE even sends a charge to Medicare for a doctor visit when the nurse practitioner was the only one who actually saw the patient.  Further, HAVEN HOSPICE regularly sends a doctor's charge to Medicare when in fact no one saw the patient whatsoever.

10.     By wrongfully and/or illegally certifying Medicare recipients for GIC level of care, and then continuing to falsely certify these Medicare recipients as eligible for GIC

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 5 of 20

care benefits and billing for physician visits that did not occur, Defendant was able to increase its

profits, illegally and dramatically.

11.    The fraudulent billing for doctors' visits and fraudulent certification and

billing of patients for GIC level of care at all of Defendant's care centers, during the relevant

period resulted in an approximate total loss to THE UNITED STATES of or around 80% or

more of Defendant's total Medicare Hospice revenues for the relevant period of time.

12.    Prior to filing this Complaint, Relator, JOHN SIMONS, initiated a

complaint against HAVEN HOSPICE, with Palmeto GBA, a CMS-contracted Medicare

Administrative counselor, asserting the aforementioned fraud.  The complaint was assigned case

file no. R2015-258-3808, was found to require "further development" and transferred to the

Zone Program Integrity Contractor (ZPIC) for their review on or about September 15, 2015.

## II.    THE PARTIES

13.    THE UNITED STATES OF AMERICA ex rel. Relator JOHN SIMONS is

the Plaintiff for whom recovery is sought for the false and fraudulent reimbursement of claims

for Hospice GIC care and physician visits submitted to federally funded United States Health

Care programs. Defendants' primary target from which to bilk fraudulent revenues has been, and

continues to be, Medicare.  Relator JOHN SIMONS was employed by Defendant as a Staff

Physician.   As a Staff Physician, Relator worked at the care centers owned and controlled by

Defendant.   In this position, the Relator made visits to care centers of Defendant that provided

GIC care services among other things.

14.    Defendant, NORTH CENTRAL FLORIDA HOSPICE, INC., is a Florida

not-for-profit corporation and a healthcare company engaged in the business of providing

Hospice services and supplies which are paid for by the federal United States, through, *inter alia,*

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 6 of 20

the Medicare program. Defendant, NORTH CENTRAL FLORIDA HOSPICE, INC.'s corporate

headquarters are located at 4200 NW 90th Blvd., Gainesville, FL  32606.

### III.    JURISDICTION AND VENUE

15.    This is a civil action arising under the laws of the United States to redress

violations of 31 U.S.C. §§3729-3730. This Court has jurisdiction over the subject matter of this

action: (i) pursuant to 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for

actions brought pursuant to 31 U.S.C. §§3729 and 3730; (ii) pursuant to 28 U.S.C. §1331, which

confers federal subject matter jurisdiction; and (iii) pursuant to 28 U.S.C. §1345 because the

United States is a Plaintiff.

16.    This Court has jurisdiction over the Defendant under 31 U.S.C.§3732(a)

because it can be found in, is authorized to transact business in and is now transacting business in

this District. In addition, acts giving rise to all causes of action including those proscribed by 31

U.S.C. §3729 &. §3730(h) have occurred in this District.

17.    Venue is proper in this district because Defendant conducted and

continues to conduct business in multiple counties in this district and because the acts giving rise

to this action occurred within this district.

### IV.    DEFENDANT'S RELIANCE ON THE MEDICARE PROGRAM

18.    Defendant operated five care centers in Florida and served as the sole

Hospice provider for those areas in the United States.

19.    Defendant provides care in a variety of settings, including skilled nursing

facilities, assisted living facilities, patients' private homes, hospitals, and via inpatient Hospice

facilities.

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 7 of 20

20.     Defendant's patient population is almost exclusively comprised of Medicare beneficiaries, with a total of approximately 68,000 Hospice patients being served from 1979 to the end of 2013.

21.     As a result, Medicare is Defendant's primary source of revenues. During 2013 Defendant's annual gross revenues were $63,479,626.00, virtually all of which was derived from Medicare's payment of Defendant's Medicare Hospice claims.

22.     As a Medicare Hospice provider, Defendant agreed to comply with all Federal and State regulations governing Hospice providers.  However, Defendant routinely violated Medicare's highly regulated patient certification requirements for GIC level of care by billing Medicare for services never rendered to beneficiaries in accordance with Medicare guidelines.

23.     In furtherance of the fraud scheme described herein, Defendant instituted company-wide policies, protocols, and business practices with the purpose of fraudulently obtaining tens of millions of dollars from the Medicare program and, further, Defendant presented, and caused to be presented, the false claims to the Medicare program for Hospice benefits by using the false records to obtain payment of its false Medicare GIC claims and physician visits that did not occur.

A.      **The Medicare Hospice Benefit**

24.     The United States pays for Hospice care under Medicare Part A for program beneficiaries who meet specific eligibility requirements.

25.     For qualified beneficiaries, the Medicare Hospice benefit includes the cost of most prescription drugs for pain control and symptom management, durable medical equipment, and care provided through a Hospice provider's IDT. The IDT assesses the needs of

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 8 of 20

each patient and their family and has responsibility for the development and implementation of an appropriate health care plan.

1.   **Eligibility**

26.   42 CFR §418.20 sets forth the Medicare Hospice benefit *"eligibility requirements"* and mandates that, for a beneficiary to be eligible to elect Hospice care under Medicare, an individual must be:

A.   Entitled to Part "A" of Medicare; and,

B.   Certified as being terminally ill, in accordance with the *"Certification of Terminal Illness"* (CTI) statutory requirements set forth in 42 CFR § 418.22.

27.   Pursuant to 42 CFR § 418.22(a), titled *"Timing of Certification,"* a Hospice provides must obtain written certification of terminal illness for *each* of the following periods:

A.   An initial 90-day period;

B.   A subsequent 90-day period; and

C.   An unlimited number of subsequent 60-day periods.

28.   Medicare Hospice regulations also govern the physicians who must certify, by written signature, the Certification of beneficiaries' terminal illness. These provisions, entitled *"Sources of Certification,"* provide that, for the initial 90-day period, known as the *initial certification,* the Hospice must obtain a written Certification Statement from:

A.   The Medical Director of the Hospice or the physician member of the Hospice interdisciplinary group; and

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 9 of 20

B.     The individual's Attending Physician if the individual has an Attending Physician.42 CFR §418.22 (c).

29.     For subsequent periods, known as recertification, only the Medical Director of the Hospice or the physician member of the Hospice interdisciplinary group can sign the Certification Statement. 42 CFR §418.22(d).

30.     All physician Certifications must conform to the following requirements:

A.     It must specify that the individual's prognosis is for a **life expectancy of 6 months or less** if the terminal illness runs its normal course; and

B.     clinical information and other documentation that support the medical prognosis must accompany the certification and must be filed in the medical record with the written certification. Initially, the clinical information may be provided verbally, and must be documented in the medical record and included as part of the Hospice's eligibility assessment. 42 CFR §418.3.

31.     Medicare regulations require physician certifications to be based on the physician's clinical judgment regarding the normal course of the individual's illness. 42 CFR §418.22. The meaning of this requirement is clarified in the Commentary to the Medicare regulations and the subsequent statutory amendments thereto. The Commentary adds that while medical prognostications of life expectancy are not always exact, that does not negate the fact that there must be a basis for a certification. See Commentary from 70 Federal Register, 70533-70535, November 22, 2005. Accordingly, *"[a] Hospice needs to be certain that the physician's clinical judgment can be supported by clinical information and other documentation that provide a **basis for the certification of 6 months or less** if the illness runs its normal course." Id. A signed certification, absent a medically sound basis that supports*

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 10 of 20

*the clinical judgment, is not sufficient for application of the Hospice benefit under Medicare."*

*Id.* (emphasis added).

32.     A Hospice provider must *always* obtain a written physician Certification

before it submits a claim for payment. Generally, the written Certification must be obtained

within two (2) calendar days after a certification period begins and must be filed in each patient's

medical record.

33.     Federal law also governs Hospice providers' creation of and safeguarding

of patient records of the Hospice care provided. As a *Condition of Participation,* a Hospice

provider must establish and maintain a clinical record for every individual receiving care and

services. Such records must be complete, promptly and accurately documented, readily

accessible, and systematically organized to facilitate retrieval. Each clinical record must be

a comprehensive compilation of information. Entries must be made for all services provided and

signed by the person providing the services. Each patient's record must contain the following:

A.     The initial and subsequent assessments;

B.     The plan of care;

C.     Identification data;

D.     Consent and authorization and election forms;

E.     Pertinent medical history; and

F.     Complete documentation of all services and events

(including evaluations, treatments, progress notes, etc.).

34.     The beneficiary must also *elect* the Hospice benefit. To do so, the

beneficiary (or his her representative,) must, *inter alia,* acknowledge that he or she has been

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 11 of 20

given a full understanding of the palliative rather than curative nature of Hospice care, as it relates to the individual's terminal illness.

35.     Pursuant to § 3131(b) of the Affordable Care Act "*ACA*" a Hospice physician or nurse practitioner is now required to have a face-to-face encounter with a Hospice patient prior to the patient's 180TH day recertification, and each subsequent recertification. The encounter must occur no more than 30 calendar days prior to the start of the Hospice patient's third benefit period. The provision applies to recertification on and after January 1, 2011.

36.     Medicare relies upon qualified physician Certifications in paying claims for Hospice services.

## 2.     Medicare Reimbursement

37.     A Medicare Hospice provider is generally reimbursed by the United States at one of four fixed *per diem* rates, dependent on the level of care, as described below (along with their representative 2011 reimbursement rates) (The daily hospice payment rates are adjusted to account for differences in wage rates among markets. Each category of care's base rate has a labor share and a non-labor share. The labor share of the base payment amount is adjusted by the hospice wage index. Base rates are updated annually based on the hospital market basket index.):

A.     Routine Home Care (RHC)(Code 651)($146.63/day) – care provided to a patient's residence or at a nursing home;

B.     Continuous Home Care (Code 652) ($855.79/day or $35.66/hour) – care at home during a "*period of crises*" which primarily consists of continuous nursing

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 12 of 20

care. An hourly rate ($35.66) may be used if nursing care is provided at less than a 24 hour basis;

      C.      <u>General Inpatient Care</u> (GIC)(Code 656)($652.27/day) – covers inpatient care when necessary for pain control or acute/chronic system management which cannot be provided in other settings; and

      D.      <u>Inpatient Respite Care</u> (IRC)(Code 655)($151.67/day) – covers care provided by a certified Hospice program at an unapproved inpatient facility.

38.      To better manage Medicare claims payments, the Medicare regulations provide for an annual *"Cap"* on the amount of reimbursement each facility a Hospice provider operates is eligible to receive during each Medicare fiscal year (the *"Cap Period"*). 42 CFR §§ 418.301 and 418.309. A facility's Medicare Cap number depends upon the number of Medicare beneficiaries the provider enrolls during the applicable Cap year. The Medicare Cap is calculated at the end of the Cap Period. Accordingly, if a provider exceeds the Cap during the Cap period, the provider must refund the overage to Medicare.

### 3.      <u>Hospice Provider Enrollment & Claims Reimbursement</u>

39.      A Hospice provider must enroll in the Medicare program, using the Medicare Enrollment Application, Form CMS-855A, to receive Medicare reimbursement for covered Hospice services provided to eligible beneficiaries. The enrollment application includes a certification statement requiring the enrolling provider to certify the provider's adherence to a list of requirements, including:

      A.      *I agree to abide by the Medicare laws, regulations and program instructions that apply to this provider. The Medicare laws, regulations, and program instructions are available through the Medicare contractor. I understand that payment of*

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 13 of 20

*a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the provider's compliance with all applicable conditions of participation in Medicare.*

*B.      I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and I will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.*

40.      Following enrollment, to receive reimbursement, a Hospice provider must submit to the Medicare fiscal intermediary a written claim, the Form B-92 (now the CMS 1500), or an electronic claim submitted by signing and complying with an *"Electronic Data Interchange Enrollment Agreement."*

41.      Pursuant to the Electronic Data Interchange Enrollment Agreement, the Hospice provider certifies that all claims are true, accurate, and correct; agrees that all claims are a claim for payment under the Medicare program that will be paid from federal funds; and agrees that the falsification or misrepresentation of any record or information relating to such claims violates applicable federal law. The electronic claims themselves contain a certification of accuracy and veracity. Defendants executed an Electronic Data Exchange Agreement.

42.      A Hospice provider that knowingly, or with reckless disregard, submits physician visit charges or GIC claims to Medicare (or knowingly causes such claims to be submitted to Medicare) for patients that were not seen by a physician or where no documents exist to support any doctor visit or continued GIC care, as defined by applicable law and regulations, is liable for the submission of a false claim, as that term is defined under the False Claims Act.

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 14 of 20

43.     The Medicare Hospice Benefit is also subject to regulatory requirements set forth in the Code of Federal Regulations. Pursuant thereto, Hospice providers must comply with specified regulatory requirements, including those regulations grouped under the title *"Conditions of Participation."* 42 CFR § 418.50(a). Using the electronic and other means, Defendants routinely filed false certifications of compliance with all applicable regulatory requirements because Defendants failed to comply with many substantive Hospice benefit eligibility requirements.

## V.     ESTIMATED LOSSES SUSTAINED BY THE UNITED STATES

44.     The Key metric for the calculation of losses sustained by the United States as a result of Defendants' Medicare fraud is the average daily GIC per patient per diem reimbursement paid and physician visit reimbursement to Defendants for all levels of Hospice care provided to the patients treated by each of its offices during the statutory recoverable period of time.

45.     For the purposes of this damages analysis, the average per diem rate for GIC care of $652.27 for each patient is used. This is a conservative number because the average per diem rate may have been higher in other years and does not include other reimbursable costs for physicians' services, medications and medical devices.

46.     The estimated total loss sustained by the United States as a result of Defendants' fraudulent scheme is probably in the hundreds of millions range, or around 80% of Defendant's total Medicare revenues for the statutory recoverable period of time.   A full calculation of the damages will require an extensive review and audit of all pertinent medical and billing records.

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 15 of 20

## VI. COUNTS

### COUNT I
### (Violation of False Claims Act — 31 U.S.C. Section 3729(a)(1))

47.     Relator incorporates by reference and re-alleges ¶ 1-46 as if fully set forth herein. This claim is brought by Relator, JOHN SIMONS, in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Defendant's violation of 31 U.S.C. §3729(a)(1).

48.     For the entire statutory recoverable period of time until present, Defendant knowingly presented or caused to be presented, directly or indirectly, to officers, employees or agents of the United States, false or fraudulent claims for payment or approval by the Medicare Hospice benefit program, to wit, claims for the reimbursement of Defendant's for GIC related services and physician visits allegedly provided by physicians and/or certified nurse practitioners to patients by Defendants during that period.

49.     Plaintiff United States, unaware of the falsity of the claims and/or statements which the Defendant made to the United States, and in reliance on the accuracy thereof, paid said Defendant for claims that would otherwise not have been allowed.

50.     By reason of those unlawful practices described herein, substantial numbers of unperformed services have been billed to Medicare's Hospice benefit program and these benefits have provided substantial profits to the Defendant. The GIC Hospice services and physician visits which were not provided to patients are the basis of the false and fraudulent claims presented to the United States.

51.     By reason of these unlawful practices by Defendant, as aforesaid, Doctors and other health care providers have been induced to ignore or be complicit in billing for GIC services and physician visits not rendered or allowed for under the law.

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 16 of 20

52.     The amounts of the false or fraudulent claims to the United States are material. Plaintiff United States, being unaware of the falsity of the claims and/or statements presented by the Defendant, and in reliance on the accuracy thereof paid and may continue to pay Defendant for GIC Hospice services fraudulently billed under the Medicare Hospice benefit program.

**WHEREFORE,** Relator, JOHN SIMONS, on behalf of himself and the United States, request the following relief:

(A)     Judgment against Defendant in the amount of three (3) times the amount of damages the United States of America has sustained because of Defendant's actions, plus a civil penalty of $10,000.00 for each action in violation of 31 U.S.C. §3729(a)(1), and the appropriate fines and penalties for violating the protective federal laws applicable to the fraudulent and false conduct, as well as the cost of this action with interest;

(B)     That Relator, JOHN SIMONS, be awarded all costs incurred, including reasonable attorneys' fees;

(C)     That Relator, JOHN SIMONS, be awarded an appropriate amount for disclosing evidence or information that the United States did not possess before filing and disclosure of this complaint or compliance action brought to the United States. The appropriate amount is not greater than twenty-five percent (25%) of the proceeds of the action or settlement of a claim. The amount awarded to Relator, JOHN SIMONS, also includes the results of United States' actions or the settlement of claims resulting from the expansion of claims through the United States' further investigation directly generated from or attributable to Relator's information; and

(D)     Such other relief as this Court deems just and appropriate.

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 17 of 20

## COUNT II
## (Violation of False Claims Act – 31 U.S.C. Section 3729(a)(2))

53.     Relator incorporates by reference and re-alleges ¶ 1-46 as if fully set forth herein.  This claim is brought by Relator, JOHN SIMONS, in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Defendant's violation of 31 U.S.C. §3729(a)(2).

54.     For the entire statutory period and time allowable, the Defendant knowingly made, used or caused to be made, false records or statements to get false or fraudulent claims paid or approved by the United States, in violation of 31 U.S.C. §3729(a)(2).

55.     Plaintiff, United States, unaware of the falsity of the records and/or statement or statements which Defendant made to the United States, and in reliance on the accuracy thereof, paid said Defendant for claims that would otherwise not have been allowed.

56.     By reason of the unlawful practices described herein, namely, the production and use of false and fraudulent records to have GIC services and physician visits billed to Medicare's Hospice benefit program and to support the payment of false and fraudulent claims made to the United States, numerous false and fraudulent claims have been paid by the United States.

57.     The amounts of the false or fraudulent claims to the United States are material.  Plaintiff, UNITED STATES, being unaware of the falsity of the records and/or statements presented by the Defendant, and in reliance on the accuracy thereof, paid and may

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 18 of 20

continue to pay Defendant for Hospice services and physician visits fraudulently provided under the Medicare Hospice benefit program.

**WHEREFORE,** Relator, JOHN SIMONS, on behalf of himself and the United States, request the following relief:

(A)     Judgment against the Defendant in the amount of three (3) times the amount of damages the United States of America has sustained because of Defendants' actions, plus a civil penalty of $10,000.00 for each action in violation of 31 U.S.C. § 3729(a)(2), and the appropriate fines and penalties for violating the protective federal laws applicable to the fraudulent and false conduct, as well as the cost of this action with interest;

(B)     That Relator, JOHN SIMONS, be awarded all costs incurred, including reasonable attorneys' fees;

(C)     That Relator, JOHN SIMONS, be awarded an appropriate amount for disclosing evidence or information that the United States did not possess when Plaintiff initiated a civil complaint and/or this action was brought to the United States. The appropriate amount is not greater than twenty-five percent (25%) of the proceeds of the action or settlement of a claim. The amount awarded to Relator-Plaintiffs also includes the results of United States' actions or the settlement of claims resulting from the expansion of claims through the United States' further investigation directly generated from or attributable to Relator's information; and

(D)     Such other relief as this Court deems just and appropriate.

## COUNT III
### (Violation of False Claims Act – 31 U.S.C. Section 3729(a)(3))

58.     Relator incorporates by reference and re-allege ¶ 1-46 as if fully set forth herein. This Count is brought by JOHN SIMONS in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Defendant's violations of 31 U.S.C. §3729(a)(3).

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 19 of 20

59.     By virtue of the acts described herein, among others, Defendant and executives thereof, conspired to defraud the United States by getting false or fraudulent claims allowed or paid, in violation 31 U.S.C. §3729(a)(3). The conspiracy included the following objectives and/or overt acts:

A.      An Agreement among and between Defendant and others, as further alleged herein; and

B.      Which agreement involved the provision by Defendant of policies and procedures and protocols to allow for billing of GIC Hospice care related services and physician visits for Medicare beneficiaries which were never provided or not supported by the required documentation.

i.      By reason of the unlawful practices described herein, substantial numbers of GIC related services and physician visits have been billed to Medicare's Hospice benefit program and these practices thus provided substantial profits to the Defendants who conspired to defraud the United States by presenting false and fraudulent claims to the United States.

ii.     The amounts of the false or fraudulent claims to the United States are material. Plaintiffs United States, being unaware of the conspiracy to get false and fraudulent claims allowed, paid or made payments to the Defendant based on the false records and statements provided by Defendant for inappropriate GIC Hospice services and physician visits billed to the Medicare Hospice benefits program.

**WHEREFORE,** Relator, JOHN SIMONS, on behalf of himself and the United States, request the following relief:

(A)     Judgment against Defendant in the amount of three (3) times the amount of damages the United States of America has sustained because of Defendants' actions, plus a

United States ex rel. John Simons v. North Central Florida Hospice, Inc. d/b/a Haven Hospice
Filed Under Seal Complaint for Violation of Federal False Claims Act, 31 U.S.C.§ 3729 et seq.
Page 20 of 20

civil penalty of $10,000.00 for each action in violation of 31 U.S.C. § 3729(a)(3), and the appropriate fines and penalties for violating the protective federal laws applicable to the fraudulent and false conduct, as well as the cost of this action with interest;

(B)     That Relator, JOHN SIMONS, be awarded all costs incurred, including reasonable attorneys' fees;

(C)     That Relator, JOHN SIMONS, be awarded an appropriate amount for initiating any formal investigation and disclosing evidence or information that the United States did not possess before Dr. SIMONS complained to federal authorities of the fraudulent Medicare billing practices and procedures or before this action was brought to the United States. The appropriate amount is not greater than twenty-five percent (25%) of the proceeds of the action or settlement of a claim. The amount awarded to Relator also includes the results of United States' actions or the settlement of claims resulting from the expansion of claims through the United States' further investigation directly generated from or attributable to Relator-Plaintiffs' information; and

(D)     Such other relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Relator, JOHN SIMONS, demands a jury trial on all claims so triable as a matter of right.

CHRISTOPHER C COPELAND, P.A.
824 W. Indiantown Road
Jupiter, FL  33458
561-691-9048 (office)
866-259-0719 (fax)
Primary e-mail:  Chris@CopelandPA.com
Secondary e-mail:  Carla@CopelandPA.com

/s/ Christopher C Copeland
CHRISTOPHER C. COPELAND
Florida Bar #938076
*Attorney for Plaintiff*